The 4th case, 24-2917 Southern Iowa, Jessica Laurie v. City of Des Moines et al. Mr. Wachowski May it please the court. Counsel. I'm here on behalf of the appellant Jessica Laurie. She raises an appeal from the grant of summary judgment on behalf of the City of Des Moines and the named officers, particularly Officer Garcia, arising from her arrest on October 14, 2021. She was at a gas station with a friend of hers filling up the gas tank of her Tahoe when Officer Garcia ordered her to exit her vehicle on the grounds that she appeared to have an arrest warrant arising from a misdemeanor crime against property. That was the only crime that was suspected. There was no ongoing crime. There were no calls or anything from the gas station regarding her behavior. When she was approached, she was told to turn around and put her hands behind her back. What she began to do when she realized she didn't know why she was being told that, she turned slightly to ask him. He pulled her to the side of the vehicle. As you can see on the video, the vehicle shakes. She proceeds to handcuff her without resistance. I think that this case starts with how the district court approached the video evidence in the case. There are five videos, three body cameras, two dash cams. The district court's approach to the review of these videos, we believe, was improper in the fact that she viewed them not in the light most favorable to Ms. Murray, which you are entitled to do under the Scott case. How do we know what she was thinking about when she viewed them? Let's put this in terms of the legal arguments. Yes, Your Honor. I don't want to complain about the way she viewed the videos. I mean, come on. Your Honor, I said then the fact that under Scott, you can disregard a party's version of events if they are blatantly contradicted by video evidence. In this case, there was not a blatant contradiction with the district court referring to any discrepancies as not fully supported, not entirely consistent, not an entirely accurate description. That is not a blatant contradiction requiring the video to be viewed in the light most favorable to her. Well, she testified that she didn't resist at all, and it seemed kind of obvious to me at the point where he told her to get in the car, she turned away from him and didn't get in the car. That seems to be a direct contradiction. Your Honor, my view of the video, and I believe that it was also the Vermont Police Department's view of the video, and they assessed it under, I believe the fourth was constitutional related to their policy, that I don't believe that the video blatantly shows her pulling away from him. She does decline to get into the car. She does say no twice. But I don't believe the video demonstrates a physical act of hers as in pulling away. But even if we were to view it as her having pulled away, I believe this is where the McIntosh case comes into play, because what we have here is a non-violent, non-threatening misdemeanant court- We have the Werdich case. Yeah, we have the Werdich case as well. As well, no, if it's on point, you lose on this issue. I believe that this case is more McIntosh than Werdich. In McIntosh, you have an individual who was arrested for a crime basically one degree greater than the crime sheet that Ms. Moore was arrested for. At which point he was verbally not compliant at a correctional facility. And when he was being escorted to a holding cell, he pulled his arm away and was then taken to the ground. And the courts just wondered, I believe you have the opinion on that, is that just a movement like that, the shrugging off of the officer's arm and hand on you, does not justify being taken to the ground in that kind of fashion. I believe that the moment he was taken to the ground in McIntosh is similar to how she was thrown into the vehicle here. She was not compliant, she was not a threat, she was handcuffed. And when she was thrown into the vehicle, she had no way of protecting herself when she was landing. Which I believe makes it the equivalent to a body slam in McIntosh. Ultimately, when a subdued and restrained individual. No way to protect yourself getting into the vehicle. She didn't want to go in the vehicle. I acknowledge that, Your Honor. But the Fourth Amendment permitted the officer to put her in the vehicle. Yes, it did. And it permitted her to use a degree of force to put her in the vehicle. But our position is that the degree of force under McIntosh and under Blazek as well, was such that it was improper to use on a non-threatening, non-violent misdemeanant whose hands were handcuffed behind her back. Counsel, the amount of force that was used here does seem to be unreasonable in hindsight. Or as the Supreme Court might say, from the peace of a judge's chambers. But given that Lillian had previously made some resistance to being handcuffed, and had verbally refused to comply with orders to get into the patrol car, how can we say that it was unreasonable from the perspective of the officer under these circumstances at the time? Because, Your Honor, what he says his intent was, he was expecting her to resist more. But he used the exact amount of force that he intended to use. Regardless of his intent, and his intent behind the force is irrelevant. Under Graham, good faith force does not make an otherwise unreasonable force reasonable. So in these circumstances, he knew she was handcuffed, and his intent was to put her in the vehicle head first. And we think that even if you accept that she- Because that was the only way he could get her there. I don't believe that's borne out by the record, Your Honor. I believe that if he had, this was not a circumstance where it was a tense, rapidly evolving situation. He didn't have to get her back in there voluntarily. There are ways to have put her in the vehicle. Like you put your hand on the back of her head, and you move them in. Not take them in and throw them in. So now we have to use the best available, the most reasonable. The officer doesn't have to do the most reasonable thing. He does not need to do the most reasonable thing under the circumstances. And under these circumstances, the force still must be reasonable under the circumstances. And while he doesn't necessarily need to use the least amount of force, the force he used was still unreasonable in these circumstances. As I started to say, this is not a tense, rapidly evolving situation. There were five people at the gas pumps, three of whom were police officers. The other two were handcuffed. There were no threats. Everybody recognizes, the district court and Officer Garcia recognized that this was at most passive resistance. Which while it allows for somewhat additional force, we believe that throwing somebody who is restrained by handcuffs head first into the partition of a vehicle, leaving two visible lumps on their head 13 hours later, were excessive. I would like to reserve the rest of my time for rebuttal. Thank you. Good morning. May it please the court. Counsel? Counsel, is it Ms. Mackle-Wheaton? Just Mackle is fine. I am Shelly Mackle. I represent the city of Des Moines and the individual officers here today. When a person resists arrest, even passively resisting arrest, the force that an officer must use generally increases. Officer Garcia was faced with a person who had a warrant out for her arrest, and early on in the interaction, she did pull away from him. She was verbally refusing to comply and denying that she had a warrant. In these circumstances, his use of force was reasonably calculated to get the arrest completed, and there is not a robust body of case law that would advise every other officer otherwise. Counsel, didn't your client's own internal investigation find that the amount of force used was unreasonable? They said inappropriate. I thought it was because it violated policy that only allowed reasonable force used. It did. So the policy quotes the Graham Standard, and the internal process found that Officer Garcia, that the force used was inappropriate, that he could have de-escalated more, and that he failed to complete a use of force report. So there were three separate issues. And in that circumstance, as we know, and the district courts noted this, that a policy violation does not equal a constitutional violation, and- But what if the policy is identical to the Constitution? Well, if the policy is identical- It's easier than that. Here it is. Fair enough. I mean, it is used as the framework. However, when an officer is being reviewed, and you can see from that document in our appendix two, the superior officers are not going through and comparing case law. They're not saying, is there a robust set of case law out there. They're looking at training opportunities and how to have their employees operate in an aspirational way to hit those policies. And if they don't hit the policy, we want them to be able to discipline their officers. Otherwise, we'll end up in a position where a municipality has to choose between a Monell claim and defending its officers, right? So we want to be able to say, yes, you missed the mark today. That doesn't mean that there is a legally important constitutional violation, because it just doesn't go through that rigorous process that the court would do. What is the implication, if any, of that finding for the state tort law claims? Obviously, not every tort is a constitutional violation, but just because there's not a constitutional violation doesn't mean there's not a tort. So do the state tort law claims necessarily fail? For example, if we were to decide the first issue on the second trial of qualifying the rule of analysis, but it's not clearly established. So I just want to make sure I understand your question. You're saying that if you decide that it's not clearly established that Officer Garcia, his actions were outside of the constitution. Correct. What does that mean for the state tort law claims? Well, I believe that the state of Iowa generally follows the same analysis of the Graham analysis, and so I do believe that the tort claims would be decided based on the not clearly established. Well, if it was on the first prong, I think that's correct. I'm not sure about the second prong under Iowa law. And I will just say that the Iowa law, the cases I've seen for lawsuits that fall within Iowa law, the torts, not under the previous constitutional claims that were available. Under the tort law, generally speaking, the Iowa cases come out that if you lose on either prong on the federal analysis, then you're not going to succeed on a battery claim. Your Honor, I think that this case actually meets the first prong as well. In this case, we do have someone who has a warrant. She's wanted. She is being physically resistant. By the time that the force was applied to put her in the car, she was cuffed. I'm sorry, say again. By the time the force was applied to put her in the car, she was already handcuffed. Well, if you're only arguing that piece of force. Well, yeah, I think the video destroys the first argument about her being slammed against the car, right? I don't see it. I would agree. Well, at the moment that Officer Garcia was faced with trying to get this person in a vehicle, I think it is reasonable for an officer to assume at that point that she is not going to cooperate in getting into the vehicle. She has said no twice. She has moved away from him. We do have a history now in the past couple of minutes of passive resistant behavior. And so he gave her a shove into the back of the vehicle. Now, Officer Garcia has said she suddenly kind of slacked a little bit in terms of the force that she had been, or the resistance that she had been using. And so he said, I was acting as if I'm still going to get that force. So the fact that she went in head first is an animal of him not being able to predict that she's going to give up her resistance. And in that situation, we don't expect him to be able to guess what's going to happen. Up until that moment, she is resistant. He expects her to be providing that same resistance. And so shoving her in the car was about the only way to get her in the car, aside from going through the aspirational possibilities that an officer might do. This was in the moment. She is resisting. And he shoved her in the car. And in terms of the clearly established prong, we don't have any cases that the plaintiff has provided, that Ms. Lori has provided, that deal with both of these issues, that deal with the specific circumstances that are being presented by Ms. Lori, and the force being used. We don't have any cases presented that actually fall within the shoving someone in a car. And so we're analogizing to, I think, a more serious kind of force, which is the takedown. And in that case, we've got basically three cases. We've got the Blazek case, where we have a non-suspect who isn't following directions of police, who's being verbally belligerent. And in that case, this court determined that taking him to the ground, shoving a knee in his back, wrenching his arms behind him, and handcuffing him was constitutional. It was only when he was yanked up, and that caused a very severe shoulder injury, that that stepped outside of constitutional boundaries. So we also then have the Kohler case, where you have the drunk bar owner who says, and we had to accept that as true at summary judgment, that all he did was tell the officer, you need to get out of here, I don't want you here. The officer takes him down. So at least in terms of that being a parameter, we have just words, don't justify taking someone to the ground. But just not sitting still and being verbally belligerent does justify a takedown. In between there, we have the Ehlers case, where a man was standing too close to the site of where his son was being arrested. He won't step away when the officer tells him to step away. He finally starts to move away. The officer cues the other officer, arrest him, he's not listening. And in that case, there was a takedown to the ground where the guy was just walking. And in the decision, the court said, well, it at least appeared that he was resisting. And so that was enough to have a physical takedown with an officer on top of him. And so when we look at where Jessica Lori's case falls within those parameters, it seems to me that it falls closer to the Ehlers and Blazek cases where that kind of force is appropriate as opposed to all she did was use words. I think we can all agree that the video shows at least some kind of passive resistance. And so in terms of clearly established, it's our position that the law favors Officer Garcia and therefore the other officer, Hastie, who was supposed to have intervened. It's unclear to me why Officer Hastie was left in and not Officer Dutcher. Arguably, if there's any officer who was able to see what was happening, it was Officer Dutcher. Officer Hastie was in his car, blocked by all kinds of things, so he was unable to even observe what was happening. So I'm not certain how he would have gained knowledge and had the ability to intervene. Even if this court found that the officers were not entitled to qualified immunity, I think it is important to consider that Officer Garcia testified that he erred in his use of force. He just didn't know that she was going to give up. And we require an intentional use of force by government actors in order to find liability. And so I believe, Your Honor, that also goes to the state tort claims. There would have to be some kind of volitional act. I see my time is up. Thank you very much. Thank you. Thank you, Your Honors. To start off with your initial question, in response to your initial questioning, it was the city manager who said it was inappropriate, not the Des Moines Police Department. And he said that in his letter to Ms. Lurie, explaining the fact that the complaint had been sustained. The term inappropriate was never used by the DMPD. They found it to be objectively unreasonable. Secondly, I would say that the clearly established requires the contours of the right to be established, not the specific acts. And on that note, I would say that, once again, I rely on McKintrish and Blazick. And to address Wirtish briefly, Wirtish was involved in reckless driving, refusing to stop while being pursued, refusing to exit the vehicle, and the presence of a box cutter visible in his pocket when he was taken to the ground. None of that is applicable factually to these circumstances. Thank you for your time. One more question. Do you agree that the state tort claims rise or fall with the Fourth Amendment? I disagree with that. As the qualified immunity statutes that governs the state law claims does not apply to common law claims as are at issue here under our Supreme Court precedents. Very good. Thank you, counsel. The case is well briefed and argued. There's rarely an excessive force claim these days. It doesn't, well, demonstrate the difficulty of applying that important constitutional principle. So we'll take it under advisement. Does that complete the morning's arguments? Very good. Then the court will be in recess until 2 o'clock this afternoon.